UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

LINDA A. GARCIA,

        Plaintiff,

        V.                        CASE NO. 04-CV-879

CROWN SERVICES, INC., D/B/A
CROWN STAFFING SERVICES;
PAUL TOEPFER;
LESLIE TOEPFER,

        Defendants.

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

On September 14, 2004, Linda A. Garcia ("Garcia") filed a complaint against the defendants ("Crown") alleging that they violated the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601, *et. seq.*, by interfering with her exercise of her rights under the Act and by discharging her in violation of the Act. The case was transferred to this court after all parties consented to the full jurisdiction of a magistrate judge. After completion of discovery, on October 3, 2005, the defendants moved for summary judgment.

The defendants' motion was not filed in accordance with Civil L.R. 56.2(a)(2) in that it was not accompanied by factual propositions set out in numbered paragraphs. Had the court spotted this omission, the motion would have been returned to the movants at the outset. However, the defendants' non-compliance was corrected at the time of the filing of their reply brief. A review of

the submission indicates that the defendants' reverse compliance has not prejudiced the plaintiff, and the pleadings on the defendants' motion are now closed and the matter is ready for resolution.

## I. FACTUAL SUMMARY

Crown is a temporary staffing agency that does business in Milwaukee, Wisconsin and has at least fifty employees for each working day in each of the past twenty calendar weeks. (Compl. ¶ 7; Answer ¶ 6.) Garcia became a permanent employee of Crown in October of 1997. (Compl. ¶ 10.) Garcia worked four days per week for a total of thirty-two to thirty-six hours per week. (Garcia Aff. ¶ 3.) Leslie and Paul Toepfer are managers at Crown. (Compl. ¶¶ 8-9.) In June or July of 2003, Garcia notified Leslie and Paul Toepfer that she was pregnant. (Garcia Dep. 57-58.) On approximately July 17, 2003, Paul Toepfer gave Garcia a Certification of Health Care Provider form (Garcia Dep. 76-77) and asked her to have her doctor complete the form (Garcia Dep. 76). This document is in the record as Exhibit 3 to Garcia's deposition, which is attached as an exhibit to Garcia's response. "No work after 29 weeks gestation 11-10-03" is handwritten in two separate spaces on the form. On approximately July 29, 2003, Garcia discussed her plans with Paul Toepfer and stated she intended to use her acquired Extended Sick Time (EST) and then take maternity leave after the babies were born. (Garcia Dep. 81.) Paul Toepfer agreed to this plan. (Leslie Toepfer Dep. 13.) The following day, Paul Toepfer told Garcia that she had thirty-six days of EST available. (Garcia Dep. 82.) A few days later, Garcia again asked Paul Toepfer if she could use her EST and still have maternity leave after the babies were born. Paul Toepfer said that as far as he knew this would be fine and he would get back to her if there was a problem. (Garcia Dep. 81-85.) Paul Toepfer never got back to Garcia to indicate that there was a problem with this plan. (Garcia Dep. 85.)

However, in the record as Exhibit 8 to the defendant's Motion for Summary Judgment is the Employer Response to Employee Request for Family or Medical Leave, which is from Paul Toepfer

to Garcia and dated July 17, 2003. On this form, Paul Toepfer states that Garcia is eligible for FMLA leave and states in paragraph three that Garcia must furnish a medical certification by August 1, 2003. Further, in paragraph four, Paul Toepfer has checked the box indicating that Crown will require the substitution of accrued paid leave for unpaid FMLA leave. As explanation, Paul Toepfer refers to the 2003 Policy and Procedure Manual. In paragraph six, Paul Toepfer indicates that a fitness-for-duty certificate will be required prior to Garcia being restored to employment. In paragraph eight, Paul Toepfer indicates that every Friday Garcia will be required to furnish reports as to her status and intent to return to work. Both Paul and Leslie Toepfer deny every telling Garcia that she could stack her paid leave with her FMLA leave to acquire more than twelve weeks off. (Paul Toepfer Aff. ¶ 7; Leslie Toepfer Aff. ¶ 7.)

On approximately October 31, 2003, Garcia called Paul Toepfer and informed him that her doctor told him she should be off work. Paul Toepfer told Garcia to bring in her paperwork and a letter stating what they had previously discussed regarding her taking time off when she came in to pick up her check. (Garcia Dep. 86.) On approximately November 5, 2003, Garcia gave Paul Toepfer a letter, in the record as Exhibit 5 to Garcia's Deposition, explaining what they had previously discussed. (Garcia Dep. 86-87.) In this letter, Garcia writes, in relevant part,

> I plan to use my extended sick time to cover this time off so that I will continue to be paid during my leave. . . . Once the baby's [sic] have been born I intend on returning to work after a maternity leave of 12 weeks. Depending on how much E.S.T. is used prior to my delivery, I would like to use the remainder of it if any is left, after the baby's [sic] are born. If I have used it all up before the births I plan on possibly using some vacation time or just taking the remainder to [sic] the time unpaid so as not to use all the vacation time assuming it is allowed to have the time unpaid. Whatever the case, I do plan on returning to Crown Services in the same capacity and on the same shift that I was working prior to taking my leave.

At the time she delivered this letter, Garcia was told to clean out her desk and turn in her building and office keys. (Garcia Aff. ¶ 5.) Garcia knows of no other employee being required to clean out their desk and return their keys when going on a FMLA leave. (Garcia Aff. ¶ 6.)

3

Ordinarily, employees going on leave were not asked to clean out their desks. (Paul Toepfer Dep. 25.) Also on this date, Paul Toepfer told Garcia to check in every week while she was on leave. (Garcia Dep. 100-101.) Garcia called Crown every week while she was on leave. (Garcia Dep. 102.)

On approximately November 10, 2003, Garcia received a letter, in the record as Exhibit 6 to Garcia's Deposition, from Joe Mickunas ("Mickunas"), President of Crown. (Garcia Dep. 90-91.) In this letter, dated November 6, 2003, Mickunas writes that he was forwarded Garcia's November 5, 2003 letter and wanted to respond "so there is no confusion" about the amount off she has available. Mickunas states that Garcia will not have any time available after the babies are born. He quotes the company's "Staff Personnel Policies and Procedures and says, "The maximum period of leave an employee may receive during a 12-month period under all available leave policies is 12 weeks." He then continues, "With this in mind, you will not be eligible for any time off until November 1, 2004." He closes the letter by stating that he has enclosed a copy of the 2003 Staff Personnel Policies and Procedures booklet and asks Garcia to contact him if she has any questions.

On the day she received the letter, Garcia contacted Paul Toepfer regarding Mickunas' letter. (Garcia Dep. 118.) Paul Toepfer acknowledges receiving a call from on November 17, 2003 in which he discussed Mickunas' letter with Garcia. (Paul Toepfer Dep. 32-33.) Garcia was upset during this conversation and expressed concern that she would not know when her leave was over, to which Paul Toepfer replied that he would let her know how much time she had. (Garcia Dep. 118.) However, Paul Toepfer never told Garcia when she was supposed to return to work. (Garcia Dep. 140.) Garcia talked with Paul Toepfer regarding her leave rather than checking the handbook because she believed that Paul Toepfer did not always follow Crown policies and had the authority to change Crown policies. (Garcia Dep. 99, 139-140.)

Garcia's twins were born on January 9, 2004. (Garcia Dep. 104.) Garcia assumed that the twelve weeks were counted in working days and under this assumption, Garcia calculated that her

4

leave would expire February 4, 2004. (Garcia Dep. 113.) On January 29, 2004, Garcia called Paul Toepfer in an effort to confirm the exact date she would be expected to return to work, but he was not available and did not return her call. (Garcia Aff. ¶ 8.) On January 30, 2004, Garcia again attempted to contact Paul Toepfer and was told he was out of town. (Garcia Aff. ¶ 9.) On February 3, 2004, Leslie Toepfer called Garcia and told Garcia that Crown was fully staffed. (Leslie Toepfer Dep. 41.) Garcia then called back and talked with Paul Toepfer who told Garcia that her leave was up on February 2, 2004. (Garcia Dep. 110.) Garcia offered to get a release from her doctor and to report to work that night, but Paul Toepfer told Garcia that Crown was fully staffed. (Garcia Dep. 110.) Garcia then called her doctor, asked for a release, and was told that she would have been able to return to work on February 2, 2004. (Garcia Dep. 109.)

Paul Toepfer told Garcia that Crown had replaced her soon after she had left. (Garcia Aff. 12.) On September 24, 2003, before Garcia left, Crown hired a permanent part-time employee, and another permanent part-time employee was hired in December of 2003. (Paul Toepfer Dep. 29-30.)

Garcia received a letter from Paul Toepfer dated February 10, 2004, in the record as Exhibit 10 to Garcia's Deposition, in which Paul Toepfer stated that Garcia's FMLA leave had been exhausted on January 26, 2004, and that once Crown received her doctor's work release statement, Crown would consider permitting Garcia to return to work, if Crown had any openings. Garcia did not provide Crown with her doctor's work release statement until an unemployment hearing. (Paul Toepfer Dep. 70.)

## II. SUMMARY JUDGMENT STANDARDS

A motion for summary judgment will be granted when there are no genuine issues as to material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). As provided under Rule 56(c), only "genuine" issues of "material" fact will defeat an otherwise "proper" motion for summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

Material facts are those facts which, under the governing substantive law, might affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute of such material facts is "genuine" if the evidence is such that a reasonable trier of fact could find in favor of the nonmoving party. Id.

The movant bears the burden to establish that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 159 (1970); see also Celotex Corp., 477 U.S. at 323. The moving party satisfies its burden by demonstrating "that there is an absence of evidence to support the nonmoving party's case." Celotex Corp., 477 U.S. at 325. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. Anderson, 477 U.S. at 255; Cain v. Lane, 857 F.2d 1139, 1142 (7th Cir. 1988); Spring v. Sheboygan Area School Dist., 865 F.2d 883, 886 (7th Cir. 1989). Further, "on summary judgment, a court can neither make a credibility determination nor choose between competing interests." Sarsha v. Sears, Roebuck & Co., 3 F.3d 1035, 1041 (7th Cir. 1993).

If the moving party meets its burden, the nonmoving party then has the burden to present specific facts showing that there is a genuine issue of material fact. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

### III. ANALYSIS

The FMLA creates two substantive causes of action. First, there is an interference claim in which the employee asserts that the employer denied or otherwise interfered with her substantive rights under the Act. See 29 U.S.C. § 2615(a)(1). Second, there is a retaliation claim in which an employee asserts that the employer discriminated against her for engaging in activity protected under the Act. See 29 U.S.C. § 2615(a)(1) and (2); 29 C.F.R. § 825.220(c).

In her complaint, Garcia alleges two causes of action. First, she alleges that Crown interfered with her rights under the FMLA, and second she alleges that she was wrongfully

6

discharged. The Seventh Circuit has held that claims for wrongful discharge under FMLA may be brought as either interference or retaliation claims, although the type of proof differs. Kauffman v. Fed. Ex. Corp., 426 F.3d 880, 884 (7th Cir. 2005).

In her response to the defendants' motion for summary judgment, Garcia clarifies her causes of action and presents essentially five claims: (1) she was constructively terminated when she left for medical leave and Crown hired a permanent replacement while she was on leave; (2) Crown interfered with her exercise of rights under the FMLA by violating the FMLA; (3) she was harmed by Crown's failure to designate her leave as FMLA leave; (4) she was harmed by her reliance on Paul Toepfer's promises; (5) Crown interfered with her rights under the FMLA by not telling her when she was required to return to work.

Crown defends by arguing that it was not required to reinstate Garcia because she failed to comply with Crown's FMLA policy by not providing a fitness for duty certification and by taking more than twelve weeks of leave.

### A. Interference

29 C.F.R. § 825.220(b) states:

> Any violations of the Act or of these regulations constitute interfering with, restraining, or denying the exercise of rights provided by the Act. "Interfering with" the exercise of an employee's rights would include, for example, not only refusing to authorize FMLA leave, but discouraging an employee from using such leave.

As a preliminary matter, it is necessary to distill precisely what FMLA right or rights Garcia alleges Crown violated or interfered with. Relevant to this litigation, the FMLA requires that employers provide employees with up to twelve weeks of leave during any twelve-month period, 26 U.S.C. § 2612(a), and upon completion of this leave, the FMLA requires that the employee be restored to the same or an equivalent position, 26 U.S.C. § 2614(a). Garcia alleges that both of these

7

rights were interfered with: (1) Crown interfered with her right to take leave; and (2) Crown interfered with her right to reinstatement.

### 1. *Interference With Right to Take Leave*

There is no dispute that Garcia was granted twelve weeks of leave. Although Garcia presents evidence of some misunderstanding between her and Crown regarding whether she could utilize her EST (paid leave) consecutive to her FMLA (unpaid leave) to obtain a leave longer than twelve weeks, it is undisputed that Garcia eventually recognized that she was entitled to a maximum of twelve weeks of leave and that her paid leave would be concurrent to her unpaid leave. This was all the leave she was entitled to under the FMLA and therefore, by permitting Garcia to take this leave, Garcia cannot claim that Crown interfered with her rights under 26 U.S.C. § 2612(a). There can be no interference because Garcia was permitted to fully exercise all the rights she had under § 2612(a). See Barnes v. Ethan Allen, Inc., 356 F. Supp. 2d 1306, 1311 (S.D. Fla. 2005) ("[S]ummary judgment is appropriate for Defendants if the claim is one for interference with FMLA rights, since Plaintiff received more than twelve weeks of leave."). Therefore, Crown's motion for summary judgment in regards to Garcia's claim that Crown interfered with her right under the FMLA to take twelve weeks of leave shall be granted.

### 2. *Interference With Right to Reinstatement*

Garcia alleges that Crown interfered with her right to reinstatement by failing to notify her that her paid leave would be counted as FMLA leave and by failing to notify her of the specific date she was required to return from leave. Crown defends by saying that Garcia was aware of Crown's written FMLA policies and simply failed to comply with them.

#### a. Notice That Paid Leave Will Count as FMLA Leave

Regarding an employer's requirement to inform an employee that paid leave shall count as FMLA leave, 29 C.F.R. § 825.208(b)(1) states:

> Once the employer has acquired knowledge that the leave is being taken for an FMLA required reason, the employer must promptly (within two business days absent extenuating circumstances) notify the employee that the paid leave is designated and will be counted as FMLA leave. If there is a dispute between an employer and an employee as to whether paid leave qualifies as FMLA leave, it should be resolved through discussions between the employee and the employer. Such discussions and the decision must be documented.

On July 17, 2003 Garcia informed Crown through her Certification of Health Care Provider form that as of November 10, 2003, she would no longer be able to work because of her pregnancy. Thus, Crown had two business days from July 17, 2003 to comply with 29 C.F.R. § 825.208(b)(1) and inform Garcia that her paid leave would be designated as FMLA leave. On the same day, July 17, 2003, Paul Toepfer provided to Garcia the Employer Response to Employee Request for Family or Medical Leave. On this form, Paul Toepfer indicates that Garcia's paid leave shall count as FMLA leave and refers to Crown's 2003 Policy and Procedure Manual. This was appropriate notice and therefore Crown complied with the FMLA regulations.

However, Garcia did not begin her leave on November 10, but instead began it on October 31, 2003 when her doctor informed her that she should stop working. Although there is a difference of only ten days, those ten days are potentially critical in this case. There is no evidence that Garcia received notice within two business days of October 31, 2003 that her paid leave would be counted as FMLA leave. Therefore, if such re-notification was necessary, Crown violated 29 C.F.R. § 825.208(b)(1) by not providing Garcia notice within two days that her paid leave could count as FMLA leave. However, for a violation of 29 C.F.R. § 825.208(b)(1) to constitute a violation of the FMLA, the employee must demonstrate that she was prejudiced by the violation. <u>Ragsdale v. Wolverine World Wide, Inc.</u>, 535 U.S. 81, 89 (2002). Therefore, the court need not determine whether Crown was legally required to provide re-notification unless Garcia can prove that she was prejudiced by the failure.

In order to consider that Garcia may have been prejudiced by the lack of re-notification, there must be some sort of factual distinction between the November 10 date and the October 31 date so that Garcia could possibly presume that these ten days would not count towards her twelve-week entitlement under FMLA.

There is no such factual distinction. Garcia was informed of Crown's policies as they were published in the Crown's employee handbook, and these policies were reiterated in the Employer Response to Employee Request for Family or Medical Leave. Crown's failure to provide her a new notice did not result in Garcia being uninformed of Crown's policies, and therefore Garcia cannot prove she was prejudiced.

Garcia obviously misunderstood when her leave was to end, and that her paid leave would count as FMLA time. However, Garcia's misunderstanding was not a result of Crown's failure to provide notice of FMLA policies within two days of her taking leave. The policy was published in Crown's employee handbook, yet Garcia misunderstood it. Garcia was again informed of the policy when she requested leave, yet she again misunderstood it. Had she been timely informed after she sought and obtained leave on October 31, in all likelihood, she would have continued to misunderstand the policy. This is particularly evident by the fact that after taking her leave, she was again re-informed of Crown's policy in a letter from Crown's president, and again did not seem to understand that the policy applied to her. Thus, assuming that re-notification was required when Garcia actually did take her leave, Crown's failure to comply with 29 C.F.R. § 825.208(b)(1) does not constitute a violation of the FMLA because Crown's failure did not prejudice Garcia. <u>See</u> <u>Ragsdale</u>, 535 U.S. at 90-91. Because Garcia cannot prove that she was prejudiced by Crown's failure to re-notify her of its policies, the court need not decide whether such re-notification was legally required.

### b. Notice of When Garcia's Leave Ended

Garcia alleges that Crown violated the FMLA by not informing her when she was expected to return from leave. Garcia provides no citations to any statute, regulation, or case that indicates that employers have an affirmative duty to inform employees of the date they are expected to return to work. Garcia does not dispute that her twelve weeks of leave expired on January 26, 2004 and that she did not return to work on that date. Garcia alleges that she called Crown on January 29 and 30, left messages for the Toepfers, and that the Toepfers deliberately failed to call her back until February 3, 2004. Garcia alleges that when Leslie Toepfer returned her call, Garcia was told that her leave ended on February 2, 2004 and after Garcia offered to immediately return to work, she was told that Crown was fully staffed.

Accepting Garcia's allegations as true, the crucial fact that Garcia did not return on January 26, 2004 when her leave ended, remains undisputed. The fact that Leslie Toepfer may have incorrectly told Garcia on February 3, 2004 that her leave had ended a day earlier is irrelevant. So too is Garcia's allegation that the Toepfer's ignored her messages from January 29 and 30. Neither of these allegations change that fact that Garcia failed to comply with Crown's FMLA policy by providing a work release by January 23, 2004 and returning to work by January 26, 2003.

If an employer were to misrepresent the employee's return date in an effort to cause the employee to miss the return date and thus use the employee's failure to return to work as a pretext for terminating the employee, this sort of conduct may constitute an interference with the employee's right to reinstatement. However, that is not what is alleged here. Garcia simply alleges that Crown had an affirmative duty to inform Garcia of when her leave expired. Having been provided no legal basis for such an affirmative duty and being unable to locate any such basis itself, the court concludes that there is no such duty under the FMLA, and thus, as to this cause of action, the defendants' motion for summary judgment shall be granted.

## B. Wrongful Discharge

Garcia alleges that she was terminated in retaliation for exercising her right to take FMLA leave. Crown responds that Garcia was terminated because she failed to comply with the company's FMLA policies and failed to return from leave.

Title 29, United States Code, Section 2615(a)(2) prohibits an employer from discharging "or in any other manner discriminat[ing] against any individual for opposing any practice made unlawful by" the FMLA. Section 2614(a) requires employers to reinstate employees returning from leave to identical or equivalent positions. Regarding an employer's obligation to reinstate an employee returning from FMLA leave, 29 C.F.R. § 825.214(a) states:

> On return from FMLA leave, an employee is entitled to be returned to the same position the employee held when leave commenced, or to an equivalent position with equivalent benefits, pay, and other terms and conditions of employment. An employee is entitled to such reinstatement even if the employee has been replaced or his or her position has been restructured to accommodate the employee's absence.

However, the employee's right to reinstatement is dependent upon the employee's timely return from leave. Ragsdale, 535 U.S. at 87 (citing 29 U.S.C. § 2614(a)(1)).

There is no dispute that Garcia failed to comply with the Crown's FMLA policy and failed to return to work when her leave expired. However, Garcia alleges that she was not terminated when she failed to return from leave, but rather was constructively terminated when she left for leave. Specifically, Garcia alleges that Crown never intended to reinstate her. In support of her allegation, Garcia points to the fact that she was asked to turn in her keys and clear out her desk when she went on leave. Additionally, she was told that Crown was fully staffed and did not have a position for her when she belatedly inquired about reinstatement. However, Crown had not hired any employees in the interim between the expiration of her leave and her inquiry about reinstatement.

Plaintiff is basically making a post hoc argument to support her claim that Crown's termination of Garcia on the basis that she failed to promptly return from leave is a pretext. In other words, simply because someone was initially hired to do the work when she went on leave, the defendants never intended to let her return. This argument is not persuasive because, at the time Garcia took her leave, Crown would have to assume that she would return on time. If so, her job would have to be available for her, or Crown would be in violation of the FMLA. It is only in hindsight that Garcia puts a sinister spin on Crown's demand that she turn in her keys and clean out her desk prior to going on leave. Nothing Garcia did at the time indicates that she believed she had been fired, and these actions did not cause Garcia to fail to return when her leave expired. This is not a case where, for example, an employee chose not to attempt to return from leave because he felt as if he was terminated when he began his leave. Here, Garcia's weekly calls to Crown and her attempts to determine a date to return to work indicate that Garcia fully believed that she had a job to return to until February 3, 2004 when Leslie Toepfer told her that Crown was fully staffed and did not have a position for her.

Additionally, Garcia failed to comply with Crown's policy requiring that she timely provide a medical certification that she was fit for duty and able to return to work. This constitutes another valid reason as to why Crown was entitled to terminate Garcia. See 29 C.F.R. § 825.311(c); see also, Burkett v. Beaulieu Group, LLC, 382 F. Supp. 2d 1376, 1381 (N.D. Ga. 2005); Hanson v. Sports Auth., 256 F. Supp. 2d 927, 938 (W.D. Wis. 2003). Therefore, as a matter of law, Garcia cannot prevail on her wrongful discharge claim because Garcia was not entitled to reinstatement. Thus, Crown's motion for summary judgment shall be granted.

## IV. CONCLUSION

In summary, Garcia was a victim of her own failures, and not the defendants' violations of the FMLA. For all the reasons stated herein, the court now enters the following order on the defendants' motion:

**IT IS THEREFORE ORDERED** that the defendants' motion for summary judgment is **granted**. The Clerk shall enter judgment dismissing the plaintiffs' complaint and this case with prejudice.

SO ORDERED.

Dated at Milwaukee, Wisconsin this 15th day of August, 2006.

s/AARON E. GOODSTEIN
U.S. Magistrate Judge